Our next case is case number 418-0704, and it is entitled Ambrosia Smith v. Paul Roberson. For the appellant, we have Ms. Burford. Is that how you pronounce that? Yes, ma'am. Okay, thank you. And for the appellee, Mr. Holt? Yes, ma'am. All right. You may proceed, counsel. My name is Ellen Burford, and I represent the plaintiff appellant, Ambrosia Smith, in this matter. Ambrosia Smith filed a negligence action in Macoupin County as a result of a vehicle collision that occurred on September 29, 2016. At that time, Ms. Smith was traveling northbound on Old Route 66. Also at that time, Defendant Roberson was traveling southbound on Old Route 66. Ms. Smith was traveling home from work. She slowed her vehicle and prepared to make a left-hand turn. At that time, she was struck from behind by Caitlin Hancock, and the force of that initial impact pushed her into the southbound lane, where she was later struck again by Defendant Appellate Roberson. Ms. Smith sustained severe injuries. She incurred medical bills and an inability to work for a period of time, and the entire collision was captured on video by a home security system of a nearby residence. This matter was set for trial for October 22, 2018. Party depositions were taken on August 27, 2018. Defendant's motion for summary judgment was filed September 12, 2018, and was granted at a hearing where argument was presented on September 25, 2018. The court granted summary judgment on behalf of a trial issue that shouldn't have been left for a jury to determine and when. The plaintiff is asking this court to reverse that decision and remand it back to the trial court for trial. This honorable court is well aware of the law surrounding summary judgment, and the summary judgment is a drastic means of disposing litigation as set forth by the Supreme Court ruling in St. There's no genuine issue of material fact left, and a trial issue of fact exists where there is a dispute as a matter of fact. There is a dispute as to the material fact, where reasonable persons could arrive at different positions. That is exactly what we have in this case. Judge Trumper, when she was making her ruling, analyzed and began weighing the facts. She took on the role as a fact finder, and she weighed the evidence. In her order, she determined that the collision that occurred was an unavoidable accident, and that to arrive at any other conclusion would require speculation. I respectfully disagree with the court's analysis that this was an unavoidable collision. The court relied heavily upon the Fourth District case, Cooley v. Central Area Recycling, and that case was provided to me. It is not a case that I found in advance of that hearing. Both parties had submitted a response to defendant's motion. Defendant's counsel hadn't cited either, and I was provided a brief recess in which to read that case. After reading the case, we reconvened, and a hearing took place. Upon first glance, there are some similarities between what happened in the Cooley case and what happened with Ms. Ambrosia Smith when she was struck. But the differences, and upon analyzing the case, the differences are strong enough that they should have been presented before a jury. For example, in the Cooley case, the defendant was a garbage truck driver. He was driving his vehicle, and he was approaching an intersection. The driver in that vehicle had no notice, no foreseeability that the plaintiff was going to disobey the traffic laws and run that stop sign. In addition, he couldn't see what was coming up. He didn't have any notice that she was even going to be proceeding through that intersection because his vision was obstructed by a line of trees. And finally, the driver in the Cooley case did do what he could in that he attempted to avoid the collision. These are all key differences between the case that we have before us today with Ms. Smith. First, just addressing some of those differences, this was a foreseeable accident by Mr. Roberson. He testified that he was very familiar with this intersection and that he drove this stretch of highway regularly. He was on his way to Walmart. He was aware that there was an intersection there. He was aware that cars would be entering and leaving the highway. He was aware that, he even testified that it would be reasonable that he assumed that Ms. Smith was going to wait for him to pass, but did not. He was also aware of another fact specifically about himself that nobody else was aware of. He was aware that he had a vision problem. He suffered from cataracts. He made his own determination that the cataracts did not affect his ability to drive. He did not take into account that the lighting was not clear. His statement that his cataracts and vision condition did not affect his ability to see was contradicted later in his testimony when he said he couldn't even see who was sitting across the street after the accident. His vision certainly played an important role in this. Along with his credibility, once we start looking into the facts of the case, not only does Mr. Roberson make some self-serving statements that his vision was not contributory to his inability to see what was going on, he also makes some statements that he just didn't have time to stop, but that he did slam on his brakes. As a result of slamming on his brakes, he hydroplaned. This calls into question Mr. Roberson's ability to see. As I mentioned earlier, there is a video that captures the whole thing. There's no evidence in the video. Is the video in the record? It should be, yes. I believe it is. The way the record is done, the electronic version, I never possess a physical hard copy. It's sent directly to the court. Okay, I understand you say you believe it is, but what if it is not? That's my question. I have a copy of it here today. Counselor and I stipulated to it earlier, so I did check that. The way it's done electronically, I don't know, I never physically saw the record, but we did admit it into evidence. It's my understanding that everything that is admitted into evidence is provided for the court in the record. So the video that captures the collision, the court viewed this video, the trial court viewed this video, and not only did she view the video, but she began doing her own testing. She stated that she went back and she timed it as to how long of a time lapse there is. Now the Cooley case does address a reaction time, but the court, in her weighing of the facts, began to determine when she believed the impact occurred and hit her stop and then hit her stop when she believed that the second collision occurred. The problem with that is it doesn't take into consideration that Mr. Roberson acknowledged that he understood that this accident was foreseeable. He could foresee that she would be in his lane of traffic, whether it's pushed there by another vehicle or whether she voluntarily drove. He said that he was aware were entering and leaving that roadway, and as a result, that he should be driving, I believe his exact words, is that he should, that his familiarity should cause him to drive slow, to be aware and watch out for cars that are entering and leaving. Well, didn't the evidence show he was driving under the speed limit? Yes, Your Honor, and I appreciate you drawing attention to that. He was, but that isn't, he was not charged with speeding. He was not charged with driving 45 in a 35. He was charged with driving too fast for conditions, and the statute specifically states that it's... You lost me there. He was charged? He was issued a citation. Okay, and the citation was what? I'm sorry, I apologize. He was not issued a citation. As you go back, he, the statute requires individuals to drive at a speed limit that was reasonable under the circumstances. The circumstances being when you approach an intersection and taking into consideration the weather conditions. So, no, I apologize. In this book, he was not charged in this situation, but it doesn't change that he was violating that statute. So, an individual can certainly be or when you're approaching an intersection, you're expected to be able to maintain your vehicle at a safe speed and control. In Cooley, in the same way the defendant truck driver should have been allowed to rely on the fact that that plaintiff was going to stop at that stop sign, the plaintiff, in our case, should have been able to rely upon the fact that other people sharing the roadway with her were going to abide by the laws of the state and maintain their vehicles under, in a safe manner, maintain control of their vehicles and drive their vehicles in a manner that is safe. That is not what Mr. Roberson did in this situation. He also testified that he understood that the roads were slick, that it didn't rain. These are more reasons that he should have slowed his driving so that if when he saw that he was approaching the intersection, to know that if that vehicle turned or came into his pathway, he would be able to slow his vehicle and control it to avoid the accident. Defendant makes makes some claims that are not supported by the video. He claims that he hydroplaned. There's no evidence in the video of that. He claims that he locked up his brakes or slammed on the brakes. If that were true, the vehicle would have nosedived or you would have seen that those two would have been visible on the video and it wasn't. I think this is important for a jury to be able to see and make that determination that Mr. Roberson is not particularly being truthful. He's actually making some self-serving statements to avoid responsibility. The defendant, Roberson, states in his testimony and in his brief that he had three options. He had the option to swerve into oncoming traffic. Nobody has suggested that that is a reasonable option. He had the option to swerve off of the road and or to do both to slow his vehicle. He didn't do that. He could have, but he didn't. Instead, he made the conscious decision to slam into the plaintiff, the only individual in this whole situation that wasn't breaking the law. The only individual in this situation that was trying to turn to go home. Defendants in his brief state, and it was in the deposition as well, some inflammatory statements that if he had swerved to the left, he would have rolled his vehicle and died. That's inflammatory statements. There's nothing to support that. If he had been driving slowly enough, he could have pulled over and aside without causing harm to other individuals on the roadway. Counsel, this question of an unavoidable collision, is that always a question of fact for the jury? Is that ever appropriate for the court to determine on a motion for summary judgment? I believe so. When I read the court... You believe so? I agree with you. I believe sometimes it's appropriate that there is an unavoidable collision. In Cooley, I read it a couple of times before I thought, what was that driver going to do when somebody else... He couldn't see the intersection at all before he was 100 feet away or 108 feet away, and then another car blows through the stop sign. That stop sign was there knowing that the other car couldn't see him. That's the purpose of the stop sign, to stop to make sure that you can see and nothing is coming. Yes, in that case, it was appropriate. This is different though, and it's different to get a list of reasons that this is different. It's different because of this individual's vision. He suffered from cataracts. He couldn't see. It was an overcast day. It's different because he was driving too fast. Okay, so let's parse this down a little bit. I apologize. Okay, so the vision issue, the cataract. We know that he indicated that his vision was impacted when he drove at night, but your position is that that's not necessarily true. You're disputing that, and that's another question of fact for the jury to determine whether or not he actually was impacted by his vision that day. Yes, Your Honor, and his testimony supports why I call it in the position where he states that there's no problems. It's only at night that it becomes what he calls in starbursts, but he contradicts his own testimony later when he says he couldn't even see clearly across the road to see the individual who is sitting on the ground, so I think that that's absolutely testimony that should have been heard by the jury to make the decision. Is he being credible in the situation? Was his vision impaired or not? In addition, the reason at night that his vision might have been more impacted would be the lack of light. It was an overcast day by his own testimony, by testimony of all parties, so I think his vision is a major distinguishing factor in this case. He didn't swerve, and he didn't even try. He made a conscious decision. Pursuant to his testimony, he made a conscious decision that his best option was to slam into the innocent driver who had just been slammed into previously. That was his decision. The plaintiff didn't have a choice to make in this case. She followed all of the rules of the road. In the same way the truck driver and pulley was following the rules of the road, the plaintiff in this case was following the rules of the road. When you're following the rules of the road and sharing the roadway with others, you have a right to rely upon the other to drive in a safe and reasonable manner, to follow the rules of the road, and neither the individual that struck the plaintiff from behind or defendant Roberson followed those rules of the road. As a result, Plaintiff Ambrosia Smith sustained severe and lasting injuries. She had to seek medical treatment. Immediately there was some fetal monitoring that had to be ongoing throughout the process. She incurred medical bills. She wasn't able to work for a period of time just because she was relying on other people to follow the rules of the road. Judge Kemper made some hypothetical questions to me during the hearing asking whether it was foreseeable for my client, whether it was foreseeable for my client to be struck from behind. This hypothetical question shows the determination of facts that are being made. It's not, and it's comparing apples to oranges. My client is facing forward. It is foreseeable for her that everybody's going to follow the rules of the road. It was foreseeable for Mr. Roberson to see that he was approaching this intersection, the road conditions were slick, and that he should be slowing. It was foreseeable, and he admits that it was foreseeable that she might turn in front of him to turn onto Lake Cahoe Road. All of that is foreseeable to him, that she might become into his lane of traffic. It was not foreseeable that my client would expect other individuals to break the rules of the road. The only individual in this situation that did not have an opportunity to make a conscious decision was Plaintiff Ambrosia Smith. I've heard, I've heard the statement before that Defendant Roberson is just as much of a victim. That's not true. Ms. Smith was severely injured. Ms. Smith was driving appropriately. She was trying to go home after working all day. Mr. Roberson had decisions to make, and he made the decision to slam into Ms. Smith's vehicle. These are all considerable facts. One other point. You have until the red light. Thank you. One last point. The court made this determination that it should be, made the determination that this was an unavoidable collision, and any other determination would cause speculation. Very different from Cooley, because there's a video that captures it. There's no speculation. There is only the ability for a jury to watch that video, time it themselves, she was evaluating evidence, time it, and make a determination as to what Mr. Roberson could have done to avoid the accident. There's no speculation in this situation. And based upon that information, the Plaintiff is asking this court to distinguish this case from the Cooley case, find that there were genuine issues, material facts, still an issue that shouldn't have been determined. Thank you. Thank you, counsel. Mr. Holt. Your Honor, please, the court. My name is attorney Mike Holt. I'm with the firm of Harrison Roche. I have an office here in Springfield. I'm here representing the appellate hearing of Paul Roberson. And so, before I get into my argument, I'm concerned about Justice Kramer and your comment that this important video was not part of the record. I think as a litigant, I'm still getting used to this electronic filing business that we're involved in, and I assume, as a matter of course, that the circuit court transmits to the appellate court the record, but we are dealing with this physical evidence. It was a CD-ROM, and I'm curious how best we correct that if we have to file a motion or a joint motion to supplement the record. I think counsel ought to agree to do that if necessary, or whether it's a matter of court where they contact the circuit court to find out what happened to this video that we submitted to Judge Trumper. And the first word that she would play, and we gave her another one, it was a big ordeal that we worked through during the assembly judgment proceeding, and we want to make sure that that is before the court. I know that counsel mentioned that she has the video with her. I don't know if you've seen what she has with her, but if the parties wanted to agree to file that as a supplement with the record, that would be agreeable to the court. And hopefully it's real key to computer evidence is getting it to play, which always seems to be struggling. So I'm happy to do that to the court, but if by chance your clerks or one of your clerks can't get it to play, can you please reach out to us and make sure we get a playable copy to the You would stipulate to the CD-ROM being placed into the record, because I'll be candid with you, I do not believe it is in the record. So that is a stipulation between the two of you. Am I correct? It was. And it is today as well. It is today as well. It's the accident. It's the accident in question. And Casey, I know I'm messing things up. Can you stop the time for a minute, because I don't want this to eat at this time. Yes, counsel. Thank you. I have it on my laptop ready to open and play. I don't have it on a CD-ROM. Okay. And I want it. Okay. I would, I mean, we're, we're a part of the class today. I can go burn it very quickly. It would not be that difficult if we had to open it. Sure. Okay. All right. Thank you. And I have it in my office, too. Okay. I think stipulated that we're stipulated that we can submit the fee on a brief basis as a supplement to the record, and we'll try to do that either today or quickly. Yes. All right. Now you can start the clock back up. So we're in 20-0 season, and I've been contemplating my whole arguments. I'm going to coin a phrase and call it the vortex of negligence. That my client, Mr. Roberson, got caught up in the vortex of negligence created by Caitlin Hancock, who's the other driver that corrupted Ms. Berker's client. This was an accident very much in progress when Mr. Roberson encountered it. It wasn't an accident that had been concluded. And the unavoidable accident doctrine is there, I believe, as a shield to protect certain drivers who fit in the class of Mr. Roberson, who I submit to no fault of their own, come upon this accident scene and have a vehicle that suddenly appears in their path of travel at a point in the time when they have the preferential right of way. Preferential right of way, road, and otherwise following the law, traveling under the speed limits, following the rules of the road. So the cases deal with, you know, you have the Kuhl case, which is a court district case, but there's others. There's a handful of excuses that are out there. Sometimes it's the plaintiff himself or herself that creates this vortex of negligence, as I call it, or it's a co-defendant. But literally, we have a car speeding in front of my client, Mr. Roberson. And you'll see the videotape, but he also testified in that position that he timed it many, many times. Judge Trumper timed it as about two and a half seconds between the first collision and the second collision. Was that appropriate for Judge Trumper to do that in resolving? I don't have a problem with that. Well, I bet you don't. No, I would expect a trial judge. I mean, if we ask a jury to apply their common sense in resolving issues of fact, I think it's almost human nature for a judge to want to know the amount of time when there's evidence in the record as to whether it's two seconds or three seconds or a contention. My counsel gets actually longer than what he says it is. So, you know, I don't think it's inappropriate to look at the physical evidence and use common sense principles as a regular person or as a jurist to confirm no more than, you know, that it was a four-truck or a vehicle or a passenger vehicle. I don't think it crosses that line into what the judge can do in terms of the research. So, in this unavoidably accident action, we have other approximate cost actions that we deal with. We deal with Murray-Moscow. We deal with Paul's bad case, the remote cause situation. That is, at the end of the approximate cause. And the hypothetical I thought of was, like, another vehicle on the roadway that was trying to get to a real estate deal. And the roads were blocked, and we couldn't make a deal. The real estate deal fell through. We lost money. And it assumes that all these vehicles, you know, the law would probably step in and say that's too normal a cause, and we're not going to recognize it. So, on the earlier side of the spectrum, we have this unavoidable accident. So, we have this continuum, this approximate cause continuum. And approximate cause is cause in fact, and it's also a legal cause. And I believe this unavoidable accident doctrine, from a policy perspective, is necessary. You know, judges and lawyers, I mean, we have all these rules that we apply to deal with the human element, and it comes at us in so many different directions. But in this particular incident, I'm using this approximate cause, unavoidable accident, arguing as a shield from the client, to shield him from legal liability. And I think the doctrine is, first of all, it's in the Kula case, so it's part of this court district's law, but it's pretty much across the state of Illinois. And they look at approximate cause. When you have concurrent causes, they look at whether it's a material element or a substantial factor, whether this particular Mr. Roberson's conduct is a material element or a substantial factor in causing the plaintiff's injuries. And where the analysis breaks down for Mr. Berkowitz's client is this time delay. That you're just dealing with about two and a half seconds of time. Let's just say, hypothetically, that's what it is. The court is satisfied it's roughly two and a half seconds time interval. And you look at this Kula case, and they concede that it takes about a second. You know, the human mind doesn't work so fast. It takes about a second to analyze what's going on to make a decision. And counsel talks about what Mr. Roberson could have done, should have done, and made these intentional decisions. He's got about a second and a half to travel 45 miles an hour to figure out what he's going to do when he's faced with this vehicle that suddenly appears in his lane of traffic spinning in front of him. And that's when the Kula case and the other cases look at this unavoidable accident document, they're basically saying there's only one proximate cause. That the Cleveland-Hancock negligence is the sole proximate cause of this accident. And all this would have, should have, could have stuff doesn't get beyond the cause and fact component of the proximate cause. That even if in the Kula case, the driver had a cement, a garbage truck, he actually was going beyond the speed limit by a few miles an hour. But the court set that aside and said, well, even if he was going to speed limits, there's no evidence that that would have changed the outcome, that the accident was still unavoidable. So they build into this unavoidable collision factor the notion that the driver may not be conducting himself in a perfect textbook manner. And we take that into account at the point of the proximate cause and say that even if Mr. Roberson could somehow have anticipated this accident further and somehow could have swerved his vehicle in that second and a half that he had to have the light go on and figure out what he was going to do. It's not enough to get a real proximate cause because the accident is going to happen anyway. And that alleged negligence is not a material factor but a substantial factor in causation analysis. The description of the accident and the video is that we have a two-lane country road, essentially. It's south of Ishmael, typical for the one on the right, one lane in the east direction, very small shoulder, ditches on either side. And Mr. Roberson does see the vehicle, the plaintiff's vehicle, which is going to turn in front of him. And everyone admits that she has to yield to Mr. Roberson. So he has a right-of-way, he's got a preferential pathway. And his attention is drawn when he sees the first collision. And at that point, the car gets pushed and he was under traffic. And again, he's got maybe a second and a half, maybe two to figure out what he's going to do or not to figure out what he's going to do. Options are very, very limited. And it was my line of questioning that, as a pensioner, you usually don't ask questions of your client. This is one where I did to establish the potential for some judgment. He's got his wife in his car. So is he going to go to the left into oncoming traffic? And what's that going to do to him? Is he going to go to the right into the ditch at 45 miles an hour? What's that going to do to him? He's got to make this decision in a second and a half. And he decides just to slam on the brakes, hit the brakes, and try and stop in the middle of the collision. So the other aspect I want to talk about is the conduct of Mr. Roberson has to be judged at the time of accident. It's not with the benefit of hindsight like we're doing today. That's well established in the case law. It's what a reasonable person would do at the time that Mr. Roberson encountered it, not to, hopefully, look at it and think backwards with hindsight. And the other aspect is there is a process called the Rule 191 affidavit that an attorney can't submit until she thinks the client has a cataract. There should have been an affidavit from a doctor or medical professional that somehow that affected the decision. If there was a police officer testimony, that was going to go and create a question of fact. But there was no Rule 191 affidavit submitted. The party has submitted a motion for summary judgment on an argument based on the depositions of three individuals that were involved in those accidents, plus the video. Lastly, the trial court and the public court does play the role of the gatekeeper. They have to do so at a point of evidence where they make decisions on motions eliminated, whether it's confident evidence or not confident evidence, and whether a case should go to the jury or not. And to answer your question, Justice Golde-White, there are cases where, under the unavoidable acts of induction, summary judgment isn't granted. The Kluge case is one of them. There's a handful of other ones out there. And I would submit to the court that this is an appropriate case with disposition that Judge Trump would describe as granting summary judgment. If the plaintiff's case fails at the point of proximate cause and summary judgment is appropriate when there's a missing element of the plaintiff's case, then your proximate cause is he absent. So accordingly, you may ask for the granting of summary judgment. Thank you, counsel. Any rebuttal, Ms. Brokert? Appreciate it, thank you. From the court record, page 336, and in your experience as a driver, if you had been going slower, would the syntax have been less severe? There were objections made. And then Mr. Roberson answered, my experience as a driver, if I had been going slower, yes, I wouldn't have hit her as hard. From the record on page 349, would you, question by me, would you have been able to take your car and swerve it to the left to avoid the impact? If I had swerved left, if I could, I'm sorry, I believe this is by counsel. If I had swerved left, if I could think that fast at that time, at that one second, if I had went to the left, I would have impacted Caitlyn or the pickup driver. Further down, was that ability to move your car to the right? I could have moved my car to the right. The only place I would have gone was to make a right-hand turn at 45 miles an hour. He has time to analyze those questions and make the decision, but he's claiming he doesn't have time to think of the impact that he's going to have when he strikes the individual that's in the car right in front of him. He didn't have time to, before this all happened, to think, I'm taking Caitlyn and others at risk by driving in these conditions with my vision impaired, by driving too fast when the roads are slick. He had time to make the decision, in hindsight, at his deposition, to make a defense, but at the time of the accident, he chose, the decision out of those three that he chose was the one that hurt Ambrosia Smith and caused her significant injuries. To state that the analysis breaks down with the unavoidable accident at two and a half seconds, that is all assuming that you start that timer at the first impact. My argument is that Mr. Roberson should have been paying attention before that. He had a clear line of vision, and if he hadn't been, if he's on the roadway, his vision should be good enough that he is not placing others at risk. So, either he wasn't paying attention and didn't see her, or his vision was impaired to the extent that he couldn't see the impact or the cars that were coming. If he had been watching ahead of time, if he had been looking up and focused on that, you would see that as my client slows to make her left hand turn, you'd see the other car come and hit her. He could have seen all of those things too, and he could have been slowing down. He chose not to. These were conscious decisions by his own testimony. He states in his testimony that he saw a plume of smoke, but that plume of smoke wasn't enough to make him slow down, because he wasn't paying attention. He either wasn't watching in front of him and paying close attention to avoid this accident, or his vision was impaired to the extent that he could not see it ahead of time. I just want to briefly address the 191 affidavit that was brought up. This situation, this summary judgment was set for hearing before there was even a motion on file. Counsel stated after the depositions that he wanted to file a motion for summary judgment, and he wanted to set a date for it. My response to counsel was that once he files the motion, that we would call the court and that we were all prepared. Instead, the clerk was copied onto this email, and it was set for a hearing on September 25th, three weeks apart, and he hadn't even filed his motion yet. He filed his motion on September 12th, and on September 25th, the court made its rule. So this was not the normal situation where the parties are given, and two weeks before was the deposition. Trial was set for October 22nd. This was not a situation where there was an abundance of time in which to do all of those things. But the crux of my argument is that under the facts that I presented to the court today, that this accident was foreseeable. The accident caused her injury. Her doctor is going to testify that she did not have these injuries prior. The doctor's deposition was scheduled for after the hearing promotion for summary judgments. But it was scheduled. We paid the fee, and we were all going to that deposition, and the doctor was coming live to trial. This case, that this accident was foreseeable. It caused the approach of Smith's injury, and as such, it was not appropriate to grant summary judgment. And so again, I'll ask the final court to please consider our request to reverse that order and revamp for a trial so that my client can have her opinion in court. Thank you, counsel. We'll take this matter under advisement and be in recess at this time.